**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-cv-00433-MEO-DCK**

**DELANDA ROBERTSON, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**v.**

**JGW DEBT SETTLEMENT, LLC and THE J.G. WENTWORTH COMPANY, LLC,**

**Defendants.**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff's First Amended Complaint (the "FAC") [Dkt. 17] responds to Defendants' original motion by adding allegations that Plaintiff received the calls in North Carolina, that JGW Debt Settlement, LLC ("JGW Debt") offers debt-resolution services in North Carolina, and that The J.G. Wentworth Company, LLC ("JGW Co.") publicly uses a common "JG Wentworth" brand for affiliated companies. Those additions address the original pleading's venue and subscriber-status omissions, but they do not cure the central defects as to either Defendant. The FAC and jurisdictional record do not show that JGW Debt placed or purposefully directed the challenged calls to North Carolina, and they do not attribute the caller's conduct to JGW Debt through an agency relationship. Nor do they identify suit-related North Carolina conduct by JGW Co. or establish that the caller acted as JGW Co.'s agent. The Court therefore lacks specific personal jurisdiction over both Defendants.

The FAC independently fails to state a claim against either Defendant. As to JGW Debt, it does not plausibly allege that JGW Debt initiated the calls or that the unidentified caller acted with JGW Debt's authority. As to JGW Co., it does not allege that JGW Co. placed the calls and does not plead facts supporting actual authority, apparent authority, or ratification. The same attribution and agency deficiencies thus defeat both the jurisdictional and merits theories, although the Rule 12(b)(2) inquiry considers the FAC and declarations while the Rule 12(b)(6) inquiry tests the pleaded facts.

The FAC's federal do-not-call claims also fail because Section 227(c) protects "residential telephone subscribers," whereas the FAC alleges calls only to Plaintiff's cellular telephone. Counts II and IV fail for additional reasons applicable to both Defendants: Count II does not identify the caller, the entity responsible for the relevant procedures, or facts supporting the asserted policy, training, recordkeeping, and compliance deficiencies, and Count IV alleges that the challenged calls ceased within the NCTSA's thirty-business-day implementation period. Accordingly, all claims should first be dismissed against both Defendants under Rule 12(b)(2). If the Court reaches the merits, Counts I through IV should be dismissed against both Defendants under Rule 12(b)(6).

## II. RELEVANT ALLEGATIONS AND JURISDICTIONAL RECORD

Plaintiff alleges that she resided in Mecklenburg County and was physically present there when she received calls beginning around December 13, 2025, from (347) 477-1853. [Dkt. 17, ¶¶ 33, 43.] The calls allegedly promoted debt-settlement

services under the "J.G. Wentworth" brand. [*Id.* ¶ 44.] Plaintiff verbally requested that "Defendants" stop calling on December 16. [*Id.* ¶ 46.] The FAC alleges that JGW Debt, directly or through persons acting on its behalf, caused at least ten additional calls through January 5, 2026. [*Id.* ¶ 47.] January 5 is also the date of the last alleged incoming call. [*Id.* ¶ 49.]

Plaintiff emailed "Defendants" on January 5 and February 9 seeking an explanation. [*Id.* ¶¶ 48, 50–51.] The FAC does not identify the email address used, the legal entity to which either message was directed, or facts showing if either message was received by "Defendants." The FAC nevertheless concludes that those emails gave JGW Co. actual knowledge and that JGW Co. failed to repudiate the calls. [*Id.* ¶ 52.]

On February 23, 2026, 49 days after the calls had ceased, Plaintiff dialed the originating number and sometime later received an email with the subject line "Thank you for contacting JG Wentworth." [*Id.* ¶ 45.] The FAC does not identify the sender's legal entity, describe the callback interaction, or allege that JGW Co. owned or operated the number. It instead treats the branded email as confirmation that the "number was operated by, or on behalf of," both Defendants. [*Id.*]

The corporate allegations concern ownership, common headquarters, shared branding, public-facing materials, and alleged referrals. [*Id.* ¶¶ 22–31.] Plaintiff alleges on information and belief that JGW Co. authorized JGW Debt and/or third-party marketing partners to use the name, website, and "related marketing infrastructure." [*Id.* ¶ 31.] The FAC then states, without identifying an agreement, instruction, right of control, or communication, that JGW Debt acted as JGW Co.'s

agent and that JGW Co. controlled, directed, authorized, and/or ratified the telemarketing conduct. [*Id.* ¶ 32.]

The declarations submitted with Defendants' original motion remain part of the jurisdictional record. JGW Debt's declarant states that the company is organized in Nevada, has its principal place of business in Pennsylvania, lacks offices, property, bank accounts, registration, a registered agent, and personnel in North Carolina, and did not specifically target Plaintiff in North Carolina. [Dkt. 13-2, ¶¶ 3–13.] JGW Co.'s declarant states that JGW Co. is organized in Delaware, has its principal place of business in Pennsylvania, lacks comparable North Carolina contacts, did not place or authorize the alleged communications, did not own or control the alleged number, does not initiate outbound solicitation calls, and does not control JGW Debt's day-to-day operations. [Dkt. 13-3, ¶¶ 1–16.]

## III. GOVERNING STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up). Nor must a court accept as true legal conclusions couched as factual allegations. *Id.*; *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Although allegations may be pleaded upon information and belief, a plaintiff must still allege facts sufficient to render the asserted inference plausible rather than speculative. *See*

*Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, 615 F. Supp. 3d 379, 384–85 (M.D.N.C. 2022). Rule 12(b)(6) also permits dismissal where the complaint fails to establish a viable claim as a matter of law. *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 228 (4th Cir. 2013).

On a Rule 12(b)(2) motion decided without an evidentiary hearing, Plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Although the Court draws reasonable inferences in Plaintiff's favor, Plaintiff may not rely on conclusory allegations and must identify specific facts supporting jurisdiction. *Id.* at 62; *Mobilization Funding, LLC v. Stokes*, 163 F.4th 55, 65 (4th Cir. 2025). Because Plaintiff does not contend that either Defendant is subject to general jurisdiction in North Carolina, Plaintiff must establish specific jurisdiction. Specific jurisdiction requires purposeful availment, a sufficient nexus between the defendant's forum contacts and the claims asserted, and constitutional reasonableness. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

## IV. ARGUMENT

### A. Attribution and Agency Are Threshold Issues Under Both Rule 12(b)(2) and Rule 12(b)(6)

Both dismissal grounds turn first on attribution. Under Rule 12(b)(2), the Court must decide whether the unidentified caller's alleged North Carolina conduct is attributable to JGW Debt or JGW Co.—either directly or under ordinary agency principles—before that conduct can supply a suit-related forum contact. Under Rule 12(b)(6), the Court must decide whether the same conduct is plausibly attributable to

either Defendant for purposes of substantive liability. The procedural records differ: the jurisdictional inquiry considers the FAC and declarations, while the merits inquiry tests the sufficiency of the FAC. But corporate affiliation, shared branding, and an unidentified caller's promotion of affiliated services do not, standing alone, attribute the calls to either Defendant under either rule. *See Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 251–54 (4th Cir. 2018); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659–61 (4th Cir. 2019).

**B. Rule 12(b)(2): Neither Defendant Has Suit-Related North Carolina Contacts**

As a threshold matter, the allegations that Plaintiff resides in North Carolina, received the calls here, and suffered harm here do not establish personal jurisdiction over either Defendant. An allegation that a defendant harmed the plaintiff in the forum "is insufficient alone to establish personal jurisdiction." *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 749 (M.D.N.C. 2006); *see also 12 Mktg., LLC v. White*, No. 7:24cv660, 2025 WL 2302136, at *4 (W.D. Va. Aug. 7, 2025) ("[T]he mere fact that an injury is felt in a forum state is not sufficient to confer jurisdiction."). The alleged harm must be accompanied by each Defendant's "own contacts with the state." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). The proper inquiry is therefore "not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also Jones v. Prilliman*, No. 1:25CV651, 2026 WL 2185695, at *5 (M.D.N.C. July 29, 2026).

Plaintiff's North Carolina domicile is equally insufficient. The minimum-contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Thus, "having a plaintiff domiciled in the forum state is neither a necessary nor a sufficient condition for the exercise of personal jurisdiction." *Estate of Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 2d 514, 520 (D. Md. 2003). Plaintiff must instead identify suit-related North Carolina conduct by each Defendant or conduct of an agent for which that Defendant is legally responsible.[1]

**1. The Court Lacks Specific Personal Jurisdiction Over JGW Debt**

The FAC's new allegations concerning Plaintiff's physical location and JGW Debt's general availability of services in North Carolina do not establish that JGW Debt purposefully directed the particular calling conduct giving rise to this action toward North Carolina. Specific jurisdiction requires suit-related contacts created by the defendant itself, not merely the plaintiff's presence in the forum or the foreseeable effects of conduct occurring elsewhere. *See Walden*, 571 U.S. at 284–86. The inquiry therefore focuses on JGW Debt's own conduct in connection with the challenged calls.

The FAC alleges that JGW Debt generally offers debt-resolution services to consumers in North Carolina and that Plaintiff received calls promoting similarly

[1] Should this case not be dismissed, Defendants reserve the right to move to strike the class allegations including on the grounds that the Court cannot certify a nationwide class because it would lack personal jurisdiction over the out-of-state absent class members. Here, the FAC is completely devoid of factual allegations that connect the out-of-state putative class members' alleged receipt of telephone calls from Defendants to Defendants' contacts with North Carolina— because there are none.

branded services while she was physically present in Mecklenburg County. [Dkt. 17, ¶¶ 16, 18–19, 24–29, 33.] But the availability of JGW Debt's services in North Carolina does not establish that JGW Debt directed the unidentified caller, the particular telemarketing campaign, or Plaintiff's calls toward this State. The FAC identifies no North Carolina-specific calling list, campaign instruction, geographic targeting criterion, lead source, advertisement, or other act by JGW Debt connecting the challenged calls to its North Carolina business. Instead, it alleges *on information and belief* that the calls were part of a nationwide campaign that included consumers in North Carolina. [Dkt. 17, p. 1 ("All allegations are being made on information and belief except to Plaintiff's own actions, of which she has personal knowledge."), ¶¶ 26, 29.] That generalized allegation does not identify any conduct by JGW Debt through which it deliberately selected North Carolina as the target of Plaintiff's calls.

The jurisdictional record further negates purposeful North Carolina direction. JGW Debt is organized in Nevada and maintains its principal place of business in Pennsylvania. It has no North Carolina office, mailing address, telephone listing, real property, bank account, business registration, registered agent, or North Carolina-based officer, manager, or employee. [Dkt. 13-2, ¶¶ 3–9.] JGW Debt's records reflected a Maryland residence for Plaintiff, and JGW Debt was unaware before this action that Plaintiff claimed to reside in North Carolina. [*Id.* ¶¶ 10–11.] Plaintiff's telephone number bears a New York area code, and the FAC does not allege that Plaintiff communicated her North Carolina location to JGW Debt before or during the challenged calls. [*See* Dkt. 17, ¶¶ 34–35, 43.] JGW Debt also has been unable to identify the alleged originating number as one it owned, maintained, or used and did not specifically target Plaintiff in North Carolina. [Dkt. 13-2, ¶¶ 12–13.]

Plaintiff's physical presence in North Carolina when an unidentified caller reached her does not, without more, establish that JGW Debt deliberately reached into North Carolina. *See Powers v. One Techs., LLC*, No. 3:21-CV-00089, 2021 WL 3519282 (W.D.N.C. Aug. 10, 2021). In *Powers*, a North Carolina TCPA plaintiff received marketing texts that ultimately linked to the defendant's website, yet the court found no purposeful availment because the defendant did not send or authorize the messages, decide who received them, know they were sent to North Carolina, or specifically target North Carolina residents. 2021 WL 3519282, at *3–4. The court further held that a nationwide marketing strategy does not itself establish minimum contacts with North Carolina absent evidence of forum-specific targeting. *Id.* at *3–4. The same reasoning applies here. The FAC alleges that mobile telephone numbers are portable and that the alleged campaign was not limited by consumers' area codes. [Dkt. 17, ¶¶ 29, 34.] But those allegations establish, at most, that a caller might reach a consumer wherever that consumer happens to be located. They do not show that JGW Debt knew Plaintiff was in North Carolina, used location information identifying her as a North Carolina consumer, or otherwise purposefully directed the calls to this forum. A consumer's unilateral decision to retain an out-of-state telephone number while residing in North Carolina cannot itself create the defendant's forum contact. *See Walden*, 571 U.S. at 284–86.

Nor does the general offering of debt-resolution services in North Carolina supply the necessary relationship between JGW Debt's forum conduct and Plaintiff's claims. Here, the FAC does not allege that Plaintiff responded to North Carolina-directed advertising, sought services through a North Carolina marketing channel, or otherwise interacted with JGW Debt's alleged North Carolina activities. It alleges

only that unidentified calls promoting J.G. Wentworth-branded services reached Plaintiff while she was in North Carolina. Because the FAC and jurisdictional record do not establish that JGW Debt purposefully directed Plaintiff's calls or the particular calling campaign toward North Carolina, the claims against JGW Debt should be dismissed under Rule 12(b)(2).

### 2. The Court Lacks Specific Personal Jurisdiction Over JGW Co.

Specific jurisdiction is defendant-specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262, 268 (2017). Thus, the caller's alleged North Carolina conduct establishes a contact for JGW Co. only if JGW Co. engaged in that conduct itself or the conduct is attributable to JGW Co. through an agency relationship. The FAC alleges that JGW Co. markets branded services through a website accessible to North Carolina consumers and that affiliated debt-resolution services are available in the State. [Dkt. 17, ¶¶ 17–19, 23–31.] Those allegations do not establish that JGW Co. directed the caller, authorized Plaintiff's calls, or controlled the alleged campaign.

The website allegations do not supply the missing suit-related contact. A website's accessibility in North Carolina does not, without forum-directed interaction tied to the claims, establish purposeful availment. *See WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 434 (M.D.N.C. 2006) (holding that "the mere fact that a web site describes 'a network of affiliated companies' and individuals does not justify asserting personal jurisdiction against each of those companies or individuals based on the assertion of personal jurisdiction as to one of them"). The FAC alleges only that the website identifies North Carolina as one of more than thirty states in which JGW

Debt—not JGW Co.—offers debt-resolution services. [Dkt. 17, ¶¶ 16–17.] It does not allege that Plaintiff visited the website, responded to North Carolina-directed content, or received the calls because of any forum conduct by JGW Co. *See WLC*, 454 F. Supp. 2d at 437. Shared branding and the nationwide availability of an affiliate's services do not connect JGW Co.'s North Carolina conduct to the calls alleged here. Because neither the FAC nor the agency allegations attribute the calls to JGW Co., the website does not establish the required relationship among JGW Co., the forum, and this litigation.

*Powers* also confirms that agency cannot supply the missing forum contact without evidence of an identifiable agent acting under the defendant's authority and control. 2021 WL 3519282, at *4–5. There, the plaintiff traced the challenged messages to a subcontractor of an affiliate and showed that the messages linked to the defendant's website. Even that connection was insufficient because the plaintiff did not establish that the defendant authorized or controlled the subcontractor. *Id.* The court emphasized that the inability to identify the alleged agent prevents meaningful analysis of the existence and scope of any agency relationship. *Id.* at *5. Here, the FAC does not identify the caller or allege facts showing that JGW Co. authorized, selected, instructed, or controlled that caller. Shared branding, corporate affiliation, and a later branded response therefore cannot convert the caller's alleged North Carolina conduct into JGW Co.'s forum contact.

The sworn record confirms the absence of that connection. JGW Co. is organized in Delaware and headquartered in Pennsylvania; it lacks offices, property, registration, a registered agent, and North Carolina personnel; it did not place or authorize the communications; it did not own or control the alleged number; and it

does not initiate outbound solicitation calls. [Dkt. 13-3, ¶¶ 1–13.] Because Plaintiff has not shown that the caller acted as JGW Co.'s agent or otherwise identified suit-related forum conduct attributable to JGW Co., she has not made the required prima facie showing. The claims against JGW Co. should be dismissed under Rule 12(b)(2).

### C. Rule 12(b)(6): The FAC Does Not Plausibly Attribute the Calls to Either Defendant

The defect is not the FAC's use of the defined term "Defendants" in isolation; it is the absence of facts showing why the challenged conduct is plausibly chargeable to each entity included in that term. Rule 8 requires sufficient factual allegations to support a claim against each defendant. Corporate affiliation and collective shorthand do not relieve Plaintiff of that burden. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422–23 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015); *Langford v. Joyner*, 62 F.4th 122, 125–26 (4th Cir. 2023).

Although Rule 8 permits alternative theories, each theory must still rest on sufficient factual allegations to make liability plausible. The FAC instead pleads critical elements through layered "and/or" alternatives without alleging facts supporting any identified path to liability. It does not identify who placed the calls, who authorized them, whether the calls were placed by JGW Debt, unidentified third-party marketers, or both, or whether JGW Co.'s alleged liability rests on actual authority, apparent authority, ratification, or some combination of those theories. Instead, the FAC lists each possibility and asks the Court to infer that at least one must be true. [Dkt. 17, ¶¶ 26, 31–32, 47, 69, 76, 86, 94.] That form of alternative

pleading does not cure the absence of facts plausibly connecting either Defendant to the caller or the challenged calls.

The FAC alleges that Plaintiff confirmed the calls were placed "by or on behalf of Defendants," asked "Defendants" to stop calling, emailed "Defendants," and received no response from "Defendants." [Dkt. 17, ¶¶ 45–51.] But it does not identify which entity operated the originating number, employed or engaged the caller, received the verbal request, or sent the later email. The February 23 email likewise bears only the shared "JG Wentworth" brand that, according to the FAC, is used across affiliated entities. [*Id.* ¶¶ 17, 30, 45.] It may suggest an association with a branded intake channel, but it does not identify the legal entity responsible for the earlier calls.

The FAC ultimately assigns different roles to the two entities: it alleges that JGW Debt initiated or caused the calls, directly or through persons acting on its behalf, and seeks to hold JGW Co. liable through direct liability or agency principles. [Dkt. 17, ¶¶ 47, 69, 76, 86, 94.] The claims must therefore be tested against the facts pleaded for each entity. As explained below, those facts do not plausibly identify JGW Debt as the initiating party or establish a basis for attributing the caller's conduct to JGW Co.

**1. The FAC Does Not Plausibly Attribute the Calls to JGW Debt**

Independently, the FAC does not plead facts permitting a reasonable inference that JGW Debt initiated the calls or that the unidentified caller acted on JGW Debt's behalf. The FAC repeatedly alleges that JGW Debt acted "directly and/or through

persons acting on its behalf" and "initiated or caused" the calls. [Dkt. 17, ¶¶ 47, 69, 76, 86, 94.] Those formulations state alternative theories of responsibility, but they do not supply facts supporting either theory.

Direct TCPA liability ordinarily attaches to the entity that takes the steps necessary to place the call. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6582–83 (2013); *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin*, 885 F.3d 243. The FAC does not allege that a JGW Debt employee placed any call, that JGW Debt owned or operated the originating number, or that the calls were placed through a telephone system maintained by JGW Debt. It does not identify the caller or describe any operational connection between the originating number and JGW Debt.

The concrete allegations supporting attribution are that the calls promoted debt-settlement services under the J.G. Wentworth brand and that, more than a month after the last incoming call, Plaintiff called the originating number and received an email with the subject line "Thank you for contacting JG Wentworth." [Dkt. 17, ¶¶ 44–45, 49.] The FAC does not identify the legal entity that sent the email, describe the callback interaction, allege that the email identified JGW Debt, or explain whether an intermediary transferred Plaintiff's inquiry to a branded intake channel. A later response bearing a shared brand may support an association between the number and the J.G. Wentworth family of companies, but it does not identify who placed the earlier calls or establish that JGW Debt took the steps necessary to initiate them.

The FAC's allegations concerning third-party marketers are similarly conclusory. The FAC alleges generally that JGW Debt obtains customers through

centralized marketing, lead generation, and telephone-solicitation activities conducted directly or through third parties. [Dkt. 17, ¶ 26.] Its cited public material allegedly shows only that another consumer "appeared to have been transferred to JG Wentworth by a third party." [*Id.* ¶ 26 & n.5.] That allegation does not identify Plaintiff's caller, establish that the same third party was involved in Plaintiff's calls, or describe any agreement between JGW Debt and the unidentified caller.

To the extent Plaintiff relies on vicarious liability, the FAC must plead facts supporting an agency relationship between JGW Debt and the caller. *Hodgin*, 885 F.3d at 251–54; *Krakauer*, 925 F.3d at 659–61. It does not allege that JGW Debt selected the caller, supplied calling lists, dictated call volume, designated target states, approved scripts, controlled dialing practices, set compensation, monitored compliance, or possessed a contractual right to control the manner and means of the caller's work. The allegation that unidentified persons acted "on [JGW Debt's] behalf" merely states the agency conclusion necessary for liability. Nor does the promotion of JGW Debt's services independently establish agency. A third party's promotion of a seller's product or use of a shared brand does not, without facts showing authority or control, establish that the third party acted as the seller's agent. *Monitronics*, 223 F. Supp. 3d at 527–28, *aff'd sub nom. Hodgin*, 885 F.3d 243.

The FAC's allegations may permit an inference that the calls had some association with a J.G. Wentworth-branded intake channel. They do not plausibly establish which entity initiated the calls or that the unidentified caller acted with authority from JGW Debt. Counts I through IV should therefore be dismissed as to JGW Debt under Rule 12(b)(6).

### 2. The FAC Does Not Plausibly Attribute the Calls to JGW Co.

Direct TCPA liability ordinarily rests on the entity that takes the steps necessary to place the call. *Dish Network*, 28 FCC Rcd. at 6582–83; *Monitronics*, 223 F. Supp. 3d at 519, *aff'd sub nom. Hodgin*, 885 F.3d 243. Section 227(c)(5) also reaches calls made "on behalf of" a seller, but attribution remains governed by ordinary agency principles. *Krakauer*, 925 F.3d at 659–61.

The FAC does not allege that JGW Co. placed any call. Instead, it alleges that JGW Debt, directly or through persons acting on its behalf, initiated or caused the calls and seeks to impose liability on JGW Co. through actual authority, apparent authority, or ratification. [Dkt. 17, ¶¶ 47, 69, 76, 86, 94.] The February 23 email does not supply the missing attribution. Plaintiff initiated that contact after the calls ended, the FAC does not identify the sending entity, and a response bearing a shared brand does not show that JGW Co. placed, directed, or caused the earlier calls. The Rule 12(b)(6) inquiry therefore turns on whether the FAC pleads facts supporting one of the asserted agency theories.

#### a. The FAC Does Not Plausibly Allege Actual Authority

Actual authority requires assent that another act on the principal's behalf and subject to the principal's control. Restatement (Third) of Agency § 1.01 (2006). In the TCPA context, the relevant question is whether the alleged principal controlled or had the right to control the manner and means of the telemarketing activity. *See Hodgin*, 885 F.3d at 251–52; *Krakauer*, 925 F.3d at 659–61.

The FAC alleges ownership, a shared address, common branding, a family-of-companies privacy notice, and authorization to use the J.G. Wentworth name, website, and marketing infrastructure. [Dkt. 17, ¶¶ 22–31.] Those allegations may show affiliation and coordinated branding, but they do not describe JGW Co.'s selection of the caller, campaign instructions, calling criteria, dialing practices, scripts, compliance oversight, compensation arrangements, or right to control the caller's work. The FAC supplies the missing element only through the conclusion that JGW Co. "controlled, directed, authorized, and/or ratified" the conduct. [*Id.* ¶ 32.] That is the type of formulaic assertion *Iqbal* does not require the Court to accept.

**b. The FAC Does Not Plausibly Allege Apparent Authority**

"Apparent authority results from a principal's manifestation of an agent's authority to a third party, regardless of the understanding between the principal and agent." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996). A caller cannot create apparent authority merely by invoking a principal's name. *See Worsham v. Disc. Power, Inc.*, No. RDB-20-0008, 2022 WL 3100762, at *8 (D. Md. Aug. 4, 2022). An agent acts with apparent authority only when a third party reasonably believes the actor has authority to act for the principal and that belief is traceable to the principal's manifestations. *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1053 (7th Cir. 2026).

Plaintiff alleges that JGW Co. authorized use of common branding and publicly identified affiliated companies under the "JG Wentworth" name. [Dkt. 17, ¶¶ 30–31.] But the FAC does not allege that Plaintiff saw or relied on those materials before or

during the calls, that those materials represented that the unidentified caller was authorized by JGW Co., or that JGW Co. made any communication to Plaintiff concerning that caller.

Nor does the FAC allege the essential corollary of apparent authority: that Plaintiff reasonably believed the caller was acting for JGW Co. because of a manifestation made by JGW Co. and relied on that belief in any way. The FAC contains no allegation that Plaintiff reviewed any website, consumer materials, privacy notices, or any other communication from JGW Co. before receiving the calls or forming any belief about the caller's authority. Absent allegations of a principal-generated manifestation reaching Plaintiff and causing a reasonable belief in the caller's authority, the FAC does not plausibly plead apparent authority. *See Auvil*, 92 F.3d at 230.

**c. The FAC Does Not Plausibly Allege Ratification**

Ratification requires more than a post hoc association between challenged conduct and a shared brand. The FAC must plausibly allege an act done or purportedly done on JGW Co.'s behalf, JGW Co.'s knowledge of the material facts, and conduct indicating affirmance. *Hodgin*, 885 F.3d at 252–54; Restatement (Third) of Agency §§ 4.01, 4.03, 4.06.

The threshold requirement is missing. The FAC does not plausibly allege that the unidentified caller acted or purported to act on JGW Co.'s behalf. It does not identify the caller, allege that JGW Co. engaged or communicated with the caller, or describe a relationship through which the caller undertook to act for JGW Co. The

promotion of services under a brand shared by affiliated companies does not itself establish that the caller purported to act as JGW Co.'s agent. *See Monitronics*, 223 F. Supp. 3d at 522–23, *aff'd sub nom. Hodgin*, 885 F.3d 243.

The FAC also fails to allege knowing acceptance of a benefit. Plaintiff alleges no enrollment, payment, commission, lead purchase, or other benefit generated by her calls and retained by JGW Co. [Dkt. 17, ¶ 32.] To the contrary, she alleges that she was never a customer of either Defendant and had no preexisting relationship with either entity. [*Id.* ¶¶ 37, 41.] Her later callback was an effort to identify the source of the calls, not a purchase or enrollment. Corporate ownership and the possibility that branded solicitations might benefit an affiliate do not plausibly allege JGW Co.'s knowing acceptance of a benefit from these calls.

The notice allegations fare no better. Plaintiff alleges that she sent her first email on January 5, 2026, the same day she received the last alleged call. [Dkt. 17, ¶¶ 48–49.] She then sent a second email on February 9, 2026, more than a month after the calls had ceased. [Id. ¶ 50.] Thus, Plaintiff's own allegations foreclose any inference that JGW Co., after acquiring knowledge of the challenged conduct, directed additional calls, approved their continuation, or otherwise adopted the caller's conduct going forward.

Nor does the FAC allege facts showing that JGW Co. knowingly accepted or retained any identifiable benefit from the specific calls at issue after learning of the material facts. *See Hodgin*, 885 F.3d at 252 (concluding that ratification of an act may result from failing to object or to repudiate it or by receiving or retaining its benefits). At bottom, the FAC alleges neither notice nor ratification. Plaintiff pleads only that she sent emails to "Defendants," not facts showing that JGW Co. actually received

them. And even if receipt were inferred, knowledge acquired only after the alleged calls ended, coupled with an alleged failure to respond, does not plausibly establish that JGW Co. adopted, affirmed, or ratified the conduct of the unidentified caller.

### D. The Section 227(c) Claims Fail Because the FAC Alleges Calls to a Cellular Telephone

The FAC's federal do-not-call claims arise under 47 U.S.C. § 227(c), but that provision protects "residential telephone subscribers" and authorizes a national database of telephone numbers belonging to "residential subscribers." 47 U.S.C. § 227(c)(1), (3), (5). Congress elsewhere expressly addressed calls to "cellular telephone service," while separately referring to "residential telephone line[s]." *Id.* § 227(b)(1)(A)(iii), (B). That deliberate distinction confirms that "residential" and "cellular" are not interchangeable statutory categories. *See ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018). Because the FAC alleges calls only to Plaintiff's cellular telephone, [Dkt. 17, ¶¶ 34–35, 43], it does not plead a violation within Section 227(c)'s private right of action.

This Court has recognized that "the structure and language of the TCPA controvert coverage of cell phones" under Section 227(c) and that the statute's clear text, including Section 227(b)'s express reference to cellular service, does not extend Section 227(c)(5) to cellular telephones. *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). Although the Fourth Circuit has not decided the issue, other courts likewise have dismissed Section 227(c) claims alleging only calls to cellular telephones. *See, e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538 (M.D. Tenn. July 20,

2018), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018); *Cunningham v. Britereal Mgmt., Inc.*, No. 4:20-cv-144-SDJ-KPJ, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020), *report and recommendation adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020).

Defendants recognize that two recent district-court decisions in this Circuit have permitted a cellular telephone to be pleaded as residential under Section 227(c). *Newman v. SGMS, Inc.*, No. 3:25-CV-0042-KDB-SCR, 2025 WL 2524131, at *2–3 (W.D.N.C. Sept. 2, 2025); *Clemens v. Consumer Sol. Ctr.*, No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2604494, at *6 n.6 (E.D. Va. July 14, 2025), *report and recommendation adopted*, 2025 WL 2427685 (E.D. Va. Aug. 22, 2025). Neither decision, however, reconciled that result with Congress's express distinction between cellular and residential service. After *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Court must independently determine the statute's best reading rather than defer to an agency interpretation or assume coverage from prior decisions. The text and structure identified in *Gaker* provide the better reading: Section 227(c)'s private right of action does not reach the cellular calls alleged here. The federal do-not-call claims therefore fail as a matter of law.

### E. Count II Independently Fails Because the FAC Does Not Plead the Asserted Policy-and-Training Deficiencies

Count II rests almost entirely on the allegations that Plaintiff told "Defendants" on December 16, 2025, that she no longer wished to receive calls and nevertheless received additional calls through January 5, 2026. [Dkt. 17, ¶¶ 46–49.]

Plaintiff alleges no calls after January 5. Thus, the FAC alleges only that calls continued for approximately twenty days after Plaintiff's request before ceasing altogether.

Those allegations may support an inference that the entity responsible for the calls did not immediately process Plaintiff's request. They do not plausibly support the far broader conclusion that Defendants lacked the written procedures, training, recordkeeping practices, or internal do-not-call policies required by 47 C.F.R. § 64.1200(d). The FAC does not identify a deficient written policy, an untrained employee, a missing internal do-not-call list, a failure to record or retain a request, or any instruction to disregard consumer requests. Nor does it identify who received Plaintiff's verbal request, whether that person was employed by either Defendant, whether the request was transmitted to JGW Debt, or whether the subsequent calls were placed by the same person or entity that allegedly received the request.

Instead, Plaintiff asks the Court to infer that every requirement imposed by § 64.1200(d) was violated because calls allegedly continued after her December 16 verbal request. The FAC supplies no facts supporting that inference. As to JGW Debt, Plaintiff converts the alleged continuation of calls into a conclusory assertion that JGW Debt failed to satisfy each procedural requirement, without plausibly connecting the caller, the recipient of the request, and the allegedly deficient procedures. As to JGW Co., the FAC does not allege that it maintained the relevant policies, trained the caller, received the request, maintained the internal do-not-call list, or administered JGW Debt's compliance procedures. Count II therefore fails to state a plausible claim against either Defendant. Indeed, the FAC affirmatively alleges that the calls ceased on January 5, 2026, less than thirty days after Plaintiff's

December 16 request, which undermines any inference that Defendants failed to implement procedures designed to honor do-not-call requests. [*Id.* ¶¶ 46, 49.]

### F. Count IV Independently Fails Under the NCTSA's Express Implementation Period

Count IV alleges that calls after Plaintiff's December 16 request violated N.C. Gen. Stat. § 75-102(b). [Dkt. 17, ¶¶ 92–95.] Subsection (b) prohibits a telephone solicitor from making a solicitation after a subscriber communicates a desire to receive no further solicitations. The same statutory scheme, however, requires the solicitor to take the steps necessary to remove the subscriber's information from its contact list and stop calling within thirty business days. N.C. Gen. Stat. § 75-102(c)(3). The provisions should be read together so that neither the prohibition in subsection (b) nor the express implementation period in subsection (c)(3) is rendered superfluous.

Plaintiff may contend that subsection (b) creates immediate liability and that subsection (c)(3) imposes only a separate procedural deadline. That reading would make the Legislature's express allowance of thirty business days to stop further solicitations largely meaningless, because every call placed while the solicitor was implementing the request would already create liability under subsection (b). The more coherent reading is that subsection (b) creates the subscriber's right to stop further solicitations, while subsection (c)(3) defines the period within which the solicitor must implement that request by removing the subscriber's information and stopping calls. Plaintiff alleges that the last call occurred on January 5, 2026—within thirty business days of December 16. [Dkt. 17, ¶ 49.] Because Plaintiff's allegations

affirmatively demonstrate that the challenged calls ceased within the statutory thirty-business-day period, the FAC fails to state a plausible claim under N.C. Gen. Stat. § 75-102(c)(3). Count IV should be dismissed under Rule 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims against JGW Debt and JGW Co. under Rule 12(b)(2). The FAC and jurisdictional record do not establish that either Defendant purposefully directed the challenged calls to North Carolina or that the unidentified caller's conduct is attributable to either Defendant through an agency relationship.

If the Court reaches the merits, Defendants request dismissal under Rule 12(b)(6) of Counts I through IV against JGW Debt because the FAC does not plausibly allege that JGW Debt initiated the calls or that the caller acted with JGW Debt's authority. Defendants request dismissal of Counts I through IV against JGW Co. because the FAC does not plausibly allege that JGW Co. placed the calls or is liable through actual authority, apparent authority, or ratification.

Independently, Defendants request dismissal of the federal do-not-call claims because Section 227(c)'s private right of action protects residential telephone subscribers and the FAC alleges calls only to Plaintiff's cellular telephone. Defendants further request dismissal of Count II against both Defendants because the FAC does not plead facts supporting the alleged policy, training, recordkeeping, and compliance failures, and dismissal of Count IV against both Defendants because the FAC alleges that the challenged calls ceased within the thirty-business-day

implementation period prescribed by N.C. Gen. Stat. § 75-102(c)(3). Defendants also request such other and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of October, 2026.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

/s/ Christi R. Hunoval
Christi R. Hunoval
N.C. Bar No. 37194
101 S. Tryon St., Suite 2550
Charlotte, NC 28280
T: (704) 625-8000
chunoval@grsm.com

/s/ Benjamin L. Williams
Benjamin L. Williams
N.C. Bar No. 53665
150 Fayetteville St., Suite 1120
Raleigh, NC 27601
T: (919) 787-4555
blwilliams@grsm.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** to be filed electronically using the Court's CM/ECF filing system, which will cause a copy to be served on all counsel of record.

This 13th day of October, 2026.


**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Christi R. Hunoval*
Christi R. Hunoval
chunoval@grsm.com
N.C. Bar No. 37194
101 S. Tryon St. Ste. 2550
Charlotte, NC 28280
T: (704) 625-8000

*/s/ Benjamin L. Williams*
Benjamin L. Williams
blwilliams@grsm.com
N.C. Bar No. 53665
150 Fayetteville St., Ste. 1120
Raleigh, NC 27601
T: (919) 787-4555
*Attorneys for Defendants*