**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:26-cv-00433**

| | |
|---|---|
| DELANDA ROBERTSON, *on behalf of herself and all others similarly situated,* | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JGW DEBT SETTLEMENT, LLC and THE J.G. WENTWORTH COMPANY, LLC, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. LEGAL STANDARDS ........ 2

III. ARGUMENT ........ 4

- A. Plaintiff Has Made a Prima Facie Showing of Specific Personal Jurisdiction Over Both Defendants. ........ 4
  - i. Specific jurisdiction lies where the defendant directs telemarketing into the forum, regardless of the recipient's area code........ 4
  - ii. The FAC supplies the forum-directed conduct and attribution that Defendants say are missing........ 7
- B. The FAC Plausibly Alleges Vicarious Liability........ 9
  - i. At the pleading stage, agency does not require pleading the undiscovered details of the telemarketing relationship. ........ 9
  - ii. The FAC plausibly alleges JG Wentworth is vicariously liable for the Actions of JGW Debt and any telemarketing vendors it hired to place the calls ........ 10
  - iii. Defendants' authorities are not persuasive. ........ 12
- C. Section 227(c) Protects Plaintiff's Residentially-Used Cellular Number, and Counts I and II May Not Be Dismissed on That Ground. ........ 13
- D. Count II States a Claim Under 47 C.F.R. § 64.1200(d)........ 18
- E. Count IV States a Claim Under NCTSA § 75-102(b), and Defendants Identify No Independent Statutory Defect in Count III. ........ 20

IV. CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) ....................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................3

*Auvil v. Grafton Homes, Inc.*, 92 F.3d 226 (4th Cir. 1996) .................... 11, 12

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) ....................9

*Boger v. Citrix Sys., Inc.*, 2020 U.S. Dist. LEXIS 36517 (D. Md. Mar. 3, 2020)....................16

*Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255 (2017) ....................8

*Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 388 S.E.2d 134 (1990) ....................21

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ....................14

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ....................9

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022) .................... 15, 16

*Clemens v. Consumer Sol. Ctr.*, No. 1:21-cv-1002, 2025 U.S. Dist. LEXIS 165086 (E.D. Va. July 14, 2025), *R&R adopted*, 2025 U.S. Dist. LEXIS 163917 (E.D. Va. Aug. 22, 2025) .................... 16, 17

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989) .................... 2, 3, 8

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) ....................3

*Cunningham v. Autoguard Advantage Corp.*, 2024 U.S. Dist. LEXIS 33631 (W.D.N.C. Feb. 27, 2024) .................... 4, 19

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017)....................11

*Doane v. Python Leads, LLC*, 2025 U.S. Dist. LEXIS 250334 (D. Mass. Dec. 4, 2025)....................5

*Dobronski v. CHW Grp., Inc.*, 2025 U.S. Dist. LEXIS 162742 (E.D. Mich. Aug. 21, 2025).................... 14, 16

*Dobronski v. Real Innovation Inc.*, 2024 U.S. Dist. LEXIS 252262 (E.D. Mich. Mar. 18, 2024)....................11

*ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) ....................8

*Fischman v. MediaStratX, LLC*, No. 2:20-CV-83-D, 2021 U.S. Dist. LEXIS 149734 (E.D.N.C. Aug. 10, 2021)....................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).................... 3, 4, 6

*Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, 2023 U.S. Dist. LEXIS 44919 (W.D.N.C. Feb. 8, 2023) .................... 16, 17

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016).................... 9, 15

*Grayson v. Anderson*, 816 F.3d 262 (4th Cir. 2016) ....................2

*Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211 (4th Cir. 2019) .......... 3, 8

*Hicks v. Houston Baptist Univ.*, 2019 U.S. Dist. LEXIS 664 (E.D.N.C. Jan. 3, 2019) .......... 5, 6

*Hirsch v. Ensurety Ventures, LLC*, 805 F. App'x 987 (11th Cir. 2020) .......... 13

*Hodgin v. Parker Waichman LLP*, 2015 U.S. Dist. LEXIS 192262 (W.D. Ky. Sept. 30, 2015) .......... 11

*Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243 (4th Cir. 2018) .......... 12, 13

*Hood v. Am. Auto Care, LLC*, 21 F.4th 1216 (10th Cir. 2021) .......... 5, 6

*Hopkins v. HomeLight Inc.*, No. 3:26-cv-05017-BHS, 2026 U.S. Dist. LEXIS 154579 (W.D. Wash. July 13, 2026) .......... 19

*Hudson v. Palm Beach Tan, Inc.*, No. 1:23-CV-486, 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) .......... 17

*In re Banks*, 295 N.C. 236, 244 S.E.2d 386 (1978) .......... 20

*In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514 (N.D. W. Va. 2016) .......... 13

*Isaacs v. USHEALTH Advisors, LLC*, 2025 U.S. Dist. LEXIS 152625 (N.D. Ga. Aug. 7, 2025) .......... 15, 18

*Jewell v. Magnolia Bank*, 2024 U.S. Dist. LEXIS 9206 (W.D. Ky. Jan. 17, 2024) .......... 11

*Jones v. Mut. of Omaha Ins. Co.*, 639 F. Supp. 3d 537 (D. Md. 2022) .......... 5, 10

*Klassen v. SolidQuote LLC*, 702 F. Supp. 3d 1052 (D. Colo. 2023) .......... 10

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .......... 9, 13

*Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023) .......... 13

*Lirones v. Leaf Home Water Sols., LLC*, 2024 U.S. Dist. LEXIS 165900 (N.D. Ohio Sept. 16, 2024) .......... 14, 15

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......... 17

*Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636 (N.D. Ill. 2017) .......... 5

*Lowrey v. Twilio Inc.*, No. 6:25-cv-00116, 2026 WL 2958730 (W.D. Va. Oct. 1, 2026) .......... 17

*Lowy v. Daniel Def., LLC*, 167 F.4th 175 (4th Cir. 2026) .......... 4

*McGonigle v. Dickey's Barbecue Rests., Inc.*, 2026 WL 2114507, 2026 U.S. Dist. LEXIS 163300 (E.D. Va. July 22, 2026) .......... 17, 18

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) .......... 17

*Misner v. Empire Auto Protect, LLC*, 2024 U.S. Dist. LEXIS 202146 (S.D. Ohio Nov. 6, 2024) .......... 14, 16

*Mobilization Funding, LLC v. Stokes*, 163 F.4th 55 (4th Cir. 2025) .......... 2

*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993) .......... 3, 8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) .......... 3, 13

*Newman v. SGMS, Inc.*, No. 3:25-CV-00042-KDB-SCR, 2025 U.S. Dist. LEXIS 169748 (W.D.N.C. Sept. 2, 2025) ........ 2, 16, 17

*Powers v. One Techs., LLC*, No. 3:21-CV-00089, 2021 WL 3519282 (W.D.N.C. Aug. 10, 2021) ........ 7

*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015) ........ 13

*Showers v. Pelican Inv. Holdings Grp., LLC*, 2026 U.S. Dist. LEXIS 20276 (S.D. Ill. Jan. 30, 2026) ........ 14, 15

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020) ........ 3

*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553 (4th Cir. 2014) ........ 3

*Walden v. Fiore*, 571 U.S. 277 (2014) ........ 7

*Wallace v. Yamaha Motors Corp., U.S.A.*, No. 19-2459, 2022 U.S. App. LEXIS 447 (4th Cir. Jan. 6, 2022) ........ 6

*Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026) ........ 14, 15

*WLC, LLC v. Watkins*, 454 F. Supp. 2d 426 (M.D.N.C. 2006) ........ 7

*Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744 (M.D.N.C. 2006) ........ 8

**Statutes**

47 U.S.C. § 227(b) ........ 17

47 U.S.C. § 227(c) ........ *passim*

N.C. Gen. Stat. § 75-101(11) ........ 22

N.C. Gen. Stat. § 75-102(a) ........ 22

N.C. Gen. Stat. § 75-102(b) ........ 20, 21

N.C. Gen. Stat. § 75-102(c) ........ 20, 21

N.C. Gen. Stat. § 75-103 ........ 21

N.C. Gen. Stat. § 75-105(c) ........ 21

**Regulations**

47 C.F.R. § 64.1200(d) ........ 2, 14, 18, 19

47 C.F.R. § 64.1200(e) ........ 14

**Rules**

Fed. R. Civ. P. 11(b)(3) ........ 4

Fed. R. Civ. P. 12(b)(2) ........ 2, 8, 10

Fed. R. Civ. P. 12(b)(6) ........ *passim*

Fed. R. Civ. P. 8(d) ........ 3, 13

**Other Authorities**

*In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd 6574 (2013) ...................................... 9, 12

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 (2003) ......................................................................................................................... 14, 15

Restatement (Third) of Agency §§ 4.01, 4.06 (Am. L. Inst. 2006) .....................................................12

## I. INTRODUCTION

Defendants have abandoned their venue and subscriber-status challenges based upon the amendments in Plaintiffs' First Amended Complaint (FAC) and now try new arguments they declined to make in their first motion to dismiss. What remains, however, are Defendants' requests to do what Rule 12 forbids—to draw inferences against Plaintiff, to credit hedged defense declarations over the well-pleaded FAC, and to adopt novel and minority readings of the TCPA and the NCTSA in order to defeat a North Carolina resident's claims at the threshold. The motion should be denied.

Despite submitting an affidavit designed to rebut Plaintiff's allegations, Defendants do not and apparently cannot dispute the central allegations that establish both personal jurisdiction and liability in this case: (1) Defendants conducted a nationwide telemarketing campaign to sell debt settlement services to consumers in North Carolina and other states across the country; (2) the calls Plaintiff received arose from that campaign; and (3) when she called the number back, Defendant JG Wentworth Company sent her an email confirming Defendants were behind the calls. Doc. 17 – FAC at ¶¶ 18, 29, 45.; *see also* Robertson Decl. ¶ 3 & Ex. A. But the complaint of course provides far more detail.

Plaintiff alleges she resided in Mecklenburg County and was physically present in this District when the challenged calls reached her personal cellular telephone; that her number is a residential, non-commercial cellular line used for personal, residential, and household purposes and registered on the National Do Not Call Registry since at least May 2018; that she was never Defendants' customer and never consented; that she received repeated telemarketing calls soliciting "J.G. Wentworth"-branded debt-settlement services; that she told Defendants to stop on December 16, 2025; that at least ten more calls followed through January 5, 2026; and that, when she dialed the number from which the calls originated, Defendant JG Wentworth Company sent her an email within minutes headed "Thank you for contacting JG Wentworth." (FAC ¶¶ 33–35, 38–40, 43–47.) The FAC further

alleges that The J.G. Wentworth Company markets the branded services, publicly presents JGW Debt Settlement as part of its "family of companies," authorized the use of its name and marketing infrastructure, and controlled, directed, authorized, or ratified the conduct. (FAC ¶¶ 17, 22, 26, 28–32, 52.)

Those allegations defeat every ground of the motion. On personal jurisdiction, Plaintiff need only make a prima facie showing, and the FAC pleads suit-related conduct directed into this District: telemarketing calls received here, promoting services Defendants sell here.[1] On the merits, the FAC plausibly attributes the calls to both Defendants under ordinary agency principles—a fact-bound inquiry that Defendants' summary-judgment authorities cannot resolve on the pleadings. Defendants' statutory arguments fare no better: Section 227(c) protects Plaintiff's residentially-used cellular number, as this District held in *Newman v. SGMS, Inc.*; Count II states a claim under Section 64.1200(d); and Count IV states a claim under a North Carolina statute that contains no grace period of the kind Defendants invent.

## II. LEGAL STANDARDS

When a Rule 12(b)(2) motion is decided on the pleadings and affidavits without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mobilization Funding, LLC v. Stokes*, 163 F.4th 55, 61 (4th Cir. 2025); accord *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). The Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. Where the parties' submissions conflict, the

[1] At a minimum, any genuine doubt about the jurisdictional facts warrants targeted discovery, not dismissal.

Court resolves the factual disputes in the plaintiff's favor. *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60, 62 (4th Cir. 1993).

Specific jurisdiction exists where a defendant purposefully directs its activities at the forum and the litigation arises out of or relates to those activities. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359–62 (2021). The Fourth Circuit asks "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Physical presence is not required; a defendant that "reach[es] into the forum State to solicit or initiate business" may be sued there. *Id.*; see *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553 (4th Cir. 2014).

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253, 255 (4th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff need not prove her claim or plead evidence; she must allege enough facts to render the claim plausible, and allegations made on information and belief are proper where the pertinent facts are peculiarly within the defendant's knowledge. Rule 8(d) expressly permits pleading alternative—and even inconsistent—theories of liability. Defendants' merits attacks therefore rise or fall on the FAC's allegations, not on declarations that (tepidly) contradict them.

The Fourth Circuit recently confirmed that allegations pleaded on information and belief are not categorically insufficient where the relevant proof is within the defendant's possession or the pleaded factual material makes the inference of culpability plausible. *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 199 & n.12 (4th Cir. 2026); see also Fed. R. Civ. P. 11(b)(3).

## III. ARGUMENT

### A. Plaintiff Has Made a Prima Facie Showing of Specific Personal Jurisdiction Over Both Defendants.

Defendants reframe personal jurisdiction as a demand that Plaintiff prove, at the pleading stage, that each Defendant subjectively knew she was in North Carolina before the first call. That inverts the governing standard and misreads the FAC. Specific jurisdiction turns on "the relationship among the defendant, the forum, and the litigation." *Ford*, 592 U.S. at 361. The FAC alleges precisely that relationship: a telemarketing campaign directed into this district, repeated telemarketing calls received on Plaintiff's cellular telephone in this District, soliciting "J.G. Wentworth"-branded debt-resolution services that Defendants market to North Carolina consumers, continued calls after Plaintiff's stop request, and a "JG Wentworth" confirmation email when Plaintiff dialed the originating number. (FAC ¶¶ 16–19, 26–32, 43–47.) Those are the specific communications that give rise to the TCPA and NCTSA claims, not generalized allegations that Defendants are merely "doing business."

#### i. Specific jurisdiction lies where the defendant directs telemarketing into the forum, regardless of the recipient's area code.

Where the defendants have engaged in a nationwide telemarketing campaign, "personal jurisdiction is proper in the District where an unlawful communication is received". *Cunningham v. Autoguard Advantage Corp.,* 2024 U.S. Dist. LEXIS 33631, at *17 (W.D.N.C. Feb. 27, 2024) (quoting *Jones v. Mut. of Omaha Ins. Co.,* 639 F. Supp. 3d 537, 550 (D. Md. 2022)) (dismissing because the plaintiff failed to connect the moving defendant to the challenged calls—an attribution gap the FAC closes here, *see infra* Part III.B); *see also Hicks v. Houston Baptist Univ.*, 2019 U.S. Dist. LEXIS 664, *13 (E.D. N.C. Jan. 3, 2019) (personal jurisdiction proper where call was received where campaign targeted consumers "in a variety of states"); *Doane v. Python Leads, LLC*, 2025 U.S. Dist. LEXIS 250334, at *17 (D. Mass. Dec. 4, 2025) (personal jurisdiction in Massachusetts even though "alleged calls were part of a nationwide campaign and not uniquely directed at Massachusetts"); *Lowe v. CVS Pharmacy, Inc.*,

233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) (personal jurisdiction in Illinois where call "occurred as part of a nationwide campaign directing customers to area MinuteClinics, including those in Illinois.")

Plaintiff alleges that defendants directed calls into this district and other states as part of a nationwide campaign, and that she received the challenged calls on her personal cellular telephone while physically present in this District. (FAC ¶¶ 33, 43.) The only additional wrinkle here is that Plaintiff retained a portable cellular number bearing an out-of-state area code after moving to this district more than a decade ago—a circumstance addressed directly by *Hood*.

That Plaintiff's number carries a New York (347) area code changes nothing. The controlling logic is *Hood v. American Auto Care, LLC*, 21 F.4th 1216 (10th Cir. 2021), where a telemarketer called a plaintiff who carried a Vermont-area-code cell phone but was located in Colorado, and the court upheld Colorado's specific jurisdiction:

> Mr. Hood was still injured there by activity essentially identical to activity that [the defendant] directs at Colorado residents. If [the defendant] places telemarketing calls to sell service contracts to Vermont and Colorado residents alike, it does not matter that they called Mr. Hood from a list of apparent Vermont residents rather than a list of apparent Colorado residents. . . .

*Hood*, 21 F.4th at 1224. The FAC alleges that Defendants' campaign "was not limited according to whether the area code assigned to a consumer's mobile telephone number corresponded with the consumer's current state of residence," and that Plaintiff used the portable number as her personal cellular telephone while residing in North Carolina. (FAC ¶¶ 29, 34.) The harm from an intrusive call is felt where the recipient is. *Ford*, 592 U.S. at 362–63.

In *Hicks*, the Eastern District of North Carolina reached the same result in a case that is directly on point. In that case, the plaintiff received the calls in North Carolina, but on a phone number with a Texas area code. *Hicks*, 2019 U.S. Dist. LEXIS 664 at *12. Just like Defendants here, the defendant in that case argued that "as a consequence, it could not be found to purposefully avail itself of the protections of North Carolina law because it did not intentionally make phone calls to plaintiff in

North Carolina." *Id.* The court rejected the argument because, just like here, the plaintiff alleged that calls were part of a larger campaign directed to multiple states. *Id.* at *13. ("the court rejects the insinuation of defendant that if it had known plaintiff was residing in North Carolina, it would not have had its agent make the September 13 or September 14 phone calls to her.")

The Fourth Circuit's application of *Ford* in *Wallace v. Yamaha Motors Corp., U.S.A.*, No. 19-2459, 2022 U.S. App. LEXIS 447, at *11 (4th Cir. Jan. 6, 2022) (unpublished), reinforces the same point. *Wallace* explained that *Ford*permitted jurisdiction where the defendant systematically served the forum market for the same product and the product injured the plaintiff there. *Id.* (finding no jurisdiction in that case because the plaintiff's injury occurred outside the forum). Here, JGW Debt serves the North Carolina market for the very debt-resolution service promoted by the challenged calls, and Plaintiff received the calls and suffered the injury in North Carolina.

**ii. The FAC supplies the forum-directed conduct and attribution that Defendants say are missing.**

Defendants rely on *Powers v. One Techs., LLC*, No. 3:21-CV-00089, 2021 WL 3519282, 2021 U.S. Dist. LEXIS 149502 (W.D.N.C. Aug. 10, 2021), but the *Powers* result was due the plaintiff's inability to connect the moving defendant to the messages he received. Here, attribution is pleaded. The calls promoted the "J.G. Wentworth" brand (FAC ¶¶ 19, 44); within minutes of dialing the originating number, Plaintiff received a "Thank you for contacting JG Wentworth" email "confirming that the number was operated by, or on behalf of, Defendants" (FAC ¶¶ 28, 45); and the FAC alleges a nationwide campaign through which "JGW Debt Settlement and persons acting on its behalf" solicited consumers, including in North Carolina (FAC ¶ 29). At the prima facie stage, those allegations—and the reasonable inferences drawn from them—establish that the suit-related calls are Defendants' forum conduct.

Nor does *WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 434, 437 (M.D.N.C. 2006), assist Defendants. Plaintiff does not contend that JGW Co. is subject to jurisdiction merely because a passive

website identifies affiliated entities. The FAC alleges that JGW Co.'s consumer-facing platform markets the same debt-resolution service to North Carolina consumers, that JGW Co. authorized use of its branding and marketing infrastructure to solicit consumers for that service, and that the challenged calls received in North Carolina promoted that very service. (FAC ¶¶ 17–19, 23–32.) The website allegations therefore form part of the alleged suit-related marketing relationship; they are not the sole asserted forum contact.

Defendants' remaining authorities do not help them. *Walden v. Fiore*, 571 U.S. 277 (2014), and the harm-in-the-forum-alone cases (e.g., *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744 (M.D.N.C. 2006); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997)) are inapposite because Plaintiff does not rest on her residence alone; she rests on Defendants' own forum-directed calls and brand-linked telemarketing. And *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), requires a defendant-specific analysis, which the FAC supplies: JGW Debt Settlement is the operating debt-settlement provider that places or causes the calls, while The J.G. Wentworth Company is the parent that markets the branded services and authorized and ratified the campaign. (FAC ¶¶ 16–17, 22, 26, 30–32.)

Defendants' declarations do not defeat jurisdiction; at most they manufacture disputes that Rule 12(b)(2) requires to be resolved in favor of Plaintiff. Neither declarant asserts that Plaintiff consented, that she was a customer, or that no calls occurred. JGW Debt Settlement swears only that it cannot identify the originating number as one it "owned, maintained, or used" (Dkt. 13-2 ¶ 12)—saying nothing about numbers dialed by third-party vendors on its behalf, which the FAC alleges (FAC ¶¶ 26, 29, 47)—and that its records reflected a "Maryland" address, a stale entry that says nothing about where Plaintiff received the calls. These hedged denials cannot be credited over the well-pled allegations in the FAC. *Combs*, 886 F.2d at 676; *Hawkins*, 935 F.3d at 226.

If the Court concludes that the present paper record leaves material jurisdictional facts unresolved, limited jurisdictional discovery is the appropriate alternative to dismissal. The Fourth Circuit recognizes that discovery under the Federal Rules is broad and that limited discovery may be warranted to explore jurisdictional facts. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). *Carefirst* confirms that jurisdictional discovery may be denied where a plaintiff offers "only speculation or conclusory assertions." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Plaintiff offers the opposite: a specific originating number, calls promoting a specifically identified J.G. Wentworth service, a branded confirmation email generated after Plaintiff contacted that same number, an express stop request, and enumerated follow-on calls. Those concrete facts provide a focused basis for discovery into who placed the calls, who owned or controlled the originating number, which marketing vendors were involved, and the relationships among those vendors and Defendants. Defendants' footnote reserving a future challenge to the nationwide class (Mem. 7 n.1) is not before the Court on this motion and supplies no basis to dismiss Plaintiff's claims now.

### B. <u>The FAC Plausibly Alleges Vicarious Liability</u>

The motion's merits theory heavily relies on the unsupported premise that a defendant escapes TCPA and NCTSA liability by declaring that it did not personally dial the calls. A seller is vicariously liable under federal common-law agency principles—actual authority, apparent authority, or ratification—for telemarketing made on its behalf. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd 6574, ¶¶ 28, 46 (2013); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659–61 (4th Cir. 2019); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–79 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016). The question is not who pressed the buttons, but whether the calls were made by or on behalf of the Defendants—a fact-intensive inquiry unsuited to a Rule 12(b)(6) dismissal.

#### i. At the pleading stage, agency does not require pleading the undiscovered details of the telemarketing relationship.

The governing pleading rule is illustrated particularly well by *Bilek v. Federal Insurance Co.*, 8 F.4th 581 (7th Cir. 2021). There, one defendant sought dismissal under Rule 12(b)(6) for failure to plead an agency relationship with lead generators, while another relied on the same asserted agency deficiency to challenge personal jurisdiction under Rule 12(b)(2). The Seventh Circuit reversed both rulings. It held that "minute details of the parties' business relationship are not required" at the pleading stage and specifically rejected the contention that the plaintiff had to allege control over the "timing, quantity, and geographic location" of the calls. *Id.* at 587–89. Those are substantially the same evidentiary details Defendants fault Plaintiff for not possessing here before discovery. *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023), denied a motion to dismiss, explaining that agency is "typically a factual issue," requiring only "generalized as opposed to evidentiary facts" at the pleading stage. Most tellingly, Defendants' own lead jurisdiction case denied a Rule 12(b)(6) motion on agency: in *Jones v. Mut. of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 551 (D. Md. 2022), the court held the plaintiff had "sufficiently alleged" vicarious liability "based on an agency theory of actual authority."

#### ii. The FAC plausibly alleges JG Wentworth is vicariously liable for the Actions of JGW Debt and any telemarketing vendors it hired to place the calls

The FAC pleads far more than corporate affiliation. It alleges that The J.G. Wentworth Company markets debt-settlement services under the "J.G. Wentworth" brand; publicly presents JGW Debt Settlement as part of its "family of companies"; "authorized JGW Debt Settlement and/or third-party marketing partners to use the J.G. Wentworth name, branding, consumer-facing website, and related marketing infrastructure"; and that JGW Debt Settlement "acted as the agent of J.G. Wentworth, with actual and/or apparent authority," while The J.G. Wentworth Company "controlled, directed, authorized, and/or ratified" the conduct and "benefited from the calls." (FAC ¶¶ 17, 30–32.) Moreover, when Plaintiff contacted the phone number from which she received the calls,

Defendant JG Wentworth sent her an email stating "Thank you for contacting JG Wentworth." *Id.* at ¶ 45.

These allegations are more than sufficient to allege both an agency relationship and actual authority. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. Apr. 26, 2017) (sufficient that plaintiff alleged the defendant "authorized [the caller] to act on their behalf to generate leads and obtain customers for alarm monitoring services."); *Jewell v. Magnolia Bank*, 2024 U.S. Dist. LEXIS 9206, at *10 (W.D. Ky. Jan. 17, 2024) (sufficient that the plaintiff "alleged that [the callers] held themselves out as persons authorized to market Defendant's services" "that she was transferred from the initial call to one of Magnolia's employees."); *Dobronski v. Real Innovation Inc.*, 2024 U.S. Dist. LEXIS 252262, at *10-12 (E.D. Mich. Mar. 18, 2024) ("Dobronski sufficiently alleges a plausible agency relationship" where "Dobronski alleged that Americo uses salespersons to sell Americo insurance products" and salespersons "attempted to sell Dobronski a $20,000 Americo life insurance policy."); *Hodgin v. Parker Waichman LLP*, 2015 U.S. Dist. LEXIS 192262, at *5 (W.D. Ky. Sep. 30, 2015) (complaint "adequately alleges agency between the initiator of the text messages and [defendant]" where plaintiff merely alleged the defendant contacted the plaintiff after he filled out an online form sent by the initiator of the text message).

As to apparent authority, Defendants correctly state the general rule that apparent authority requires a reasonable belief traceable to a manifestation by the principal. *See Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996). But that rule helps Plaintiff here as the FAC alleges a manifestation directly from the principal to Plaintiff—when she called the number from which the calls came, she received an email from "JG Wentworth" confirming it was behind the calls. (FAC ¶ 45; Robertson Decl. ¶ 3 & Ex. A.) That is precisely the kind of principal-generated manifestation *Auvil* requires. Plaintiff's allegations also track the FCC's *Dish* framework, which identifies a telemarketer's authorized use of "the seller's trade name, trademark and service mark" as indicia of apparent

authority, and holds a seller responsible where it "knew (or reasonably should have known)" of the violations and "failed to take effective steps" to stop them. *Dish*, 28 FCC Rcd 6574, ¶ 46. Plaintiff's December 16 stop request, the ten-plus calls that followed, and her unanswered January 5 and February 9 written complaints plead exactly that knowledge and failure to act. (FAC ¶¶ 46–52.)

Plaintiff also pleads ratification in the alternative. Ratification is "the affirmance of a prior act," and may occur through "conduct that justifies a reasonable assumption" of consent, including knowingly accepting the benefits of the act or failing to repudiate it after learning the material facts. Restatement (Third) of Agency §§ 4.01, 4.06. Unlike the repudiation record that defeated the *Hodgin* plaintiffs at summary judgment, the FAC alleges that after receiving Plaintiff's written complaints and acquiring "actual knowledge of the material facts," The J.G. Wentworth Company "failed to repudiate that conduct or take corrective action." (FAC ¶ 52.) At minimum, *Hodgin* does not establish that this alternative theory may be rejected on the pleadings before discovery into what JGW Co. knew, when it knew it, and what action it took after receiving Plaintiff's complaints.

**iii. Defendants' authorities are not persuasive.**

Defendants' principal TCPA authorities rejecting agency liability did so on developed evidentiary records. *Hodgin v. UTC Fire & Security Americas Corp.*, 885 F.3d 243 (4th Cir. 2018), was a summary-judgment appeal in which the plaintiffs pressed "solely" a ratification theory and lost because the record showed the principals had repudiated the conduct. *Id.* at 252–53. *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514 (N.D. W. Va. 2016)—the decision *Hodgin* affirmed—was likewise a summary-judgment ruling. Neither addresses the sufficiency of a complaint. *Krakauer* similarly affirmed a plaintiff's judgment applying ordinary agency principles to hold a seller liable for a retailer's do-not-call violations. 925 F.3d at 659–61. And *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015), and *Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023), are not agency cases at all; they

address when a complaint fails to connect a particular defendant to particular conduct—a defect the FAC avoids by assigning each entity a defined role.

Defendants' "group pleading" objection also fails. *Hirsch v. Ensurety Ventures, LLC*, 805 F. App'x 987 (11th Cir. 2020), condemned a shotgun complaint lumping seven unrelated entities without identifying who did what. Contrastingly, the FAC names two affiliated entities and directly defines each one's role, and its reference to conduct by Defendants "directly and/or through persons acting on [their] behalf" reflects that TCPA and NCTSA liability may be direct or vicarious—a permissible alternative theory under Rule 8(d) that gives fair notice. The evasive Maloney declaration cannot defeat the plausible allegations in the complaint. *Nemet*, 591 F.3d at 255.

### C. <u>Section 227(c) Protects Plaintiff's Residentially-Used Cellular Number, and Counts I and II May Not Be Dismissed on That Ground.</u>

Defendants' argument that Section 227(c) categorically excludes cellular telephones (Mem. 20–21) is contrary to the statute's text, the FCC's implementing rules, the weight of authority, and—most pointedly—a decision in this very District. It also cannot be resolved on the pleadings, because whether a line is "residential" is a question of fact.

Section 227(c) protects "residential telephone subscribers," and nothing in it excludes a cellular line used for residential purposes. Congress directed the FCC to "establish and operate a single national database to compile a list of telephone numbers of residential subscribers who object" to solicitations, 47 U.S.C. § 227(c)(3)—an express delegation the FCC exercised by extending the do-not-call rules to wireless numbers, 47 C.F.R. § 64.1200(e), and by presuming that "wireless subscribers who ask to be put on the national do-not-call list" are "residential subscribers," *In re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd 14014, 14039 (2003). The FCC's internal do-not-call rule likewise speaks of honoring "a residential subscriber's do-not-call request" while applying to wireless numbers, 47 C.F.R. § 64.1200(d)(3), (e)—confirming that a wireless line can be a residential one.

Most courts that have addressed this question have rejected Defendants' argument because the plain language of the statutory text establishes that subscribers to wireless service can be residential telephone subscribers. *See e.g., Lirones v. Leaf Home Water Sols., LLC*, 2024 U.S. Dist. LEXIS 165900, at *12-18 (N.D. Ohio Sep. 16, 2024); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 201 (S.D.N.Y. 2024); *Showers v. Pelican Inv. Holdings Grp., LLC*, 2026 U.S. Dist. LEXIS 20276, at *7 (S.D. Ill. Jan. 30, 2026); *see also Dobronski v. CHW Grp., Inc.,* 2025 U.S. Dist. LEXIS 162742, at *15–16 (E.D. Mich. Aug. 21, 2025); *Misner v. Empire Auto Protect, LLC*, 2024 U.S. Dist. LEXIS 202146, at *8-9 (S.D. Ohio Nov. 6, 2024).

Defendants' argument errs by focusing on the device that received the call when the statute focuses on the type of *user*. *See Wilson v. Easy Spirit, LLC,* 2026 U.S. Dist. LEXIS 69059, *10 (D. Conn. Mar. 31, 2026) ("the plain language of the statute does not, at any point, equate 'residential telephone' with 'landline.'") To the contrary, the term "residential telephone subscriber," by its plain language, "refers to <u>the type of subscriber and the function for which the subscriber uses the phone rather than the type of technology</u>." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *15 (emphasis added); *see also Showers*, 2026 U.S. Dist. LEXIS 20276, at *11 ("Section 227(c) provides protections to a certain type of phone *user*, regardless of the technology.") (original emphasis). Thus, "the TCPA extends to 'wireless subscribers' who use their cell phones for residential purposes—as Plaintiff did here." *Id.* at *13-14.

In other words, "residential" distinguishes residential subscribers from commercial subscribers, not landlines from cellphones. As some courts have put it, "applying the ordinary definition of 'residential' to the term 'subscriber,' a 'residential subscriber' is a person who maintains a phone for the purposes of their private residence rather than for commercial or business purposes. In other words, a residential subscriber is a person who uses their phone for activities associated with their private, domestic life." *Wilson*, 2026 U.S. Dist. LEXIS 69059, at *10 (quoting *Isaacs v.*

*USHEALTH Advisors, LLC*, 2025 U.S. Dist. LEXIS 152625, *6-7 (N.D. Ga. Aug. 7, 2025).

This makes perfect sense under the statutory framework. "Wireless subscribers often use their *wireless phones* in the same manner in which they use their residential *wireline phones*." *Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) (emphasis added) (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14038 (2003)). Indeed, "it seems safe to assume that most cellular users have their phones with them when they are at home . . . In fact, recent statistics [as of 2014] suggest that over 40% of American households now rely exclusively on wireless telephone service." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876-77 (9th Cir. 2014).

The FAC pleads Plaintiff squarely within that protection. Her number "is a residential, non-commercial cellular telephone number" used "for personal, residential, and household purposes," is "not assigned to any business," and is "presumptively residential," and she "subscribes to wireless telephone service . . . for personal, residential, and household purposes." (FAC ¶¶ 38–39.) That is enough to plausibly allege that she is a residential telephone subscriber. *CHW Grp.*, 2025 U.S. Dist. LEXIS 162742, at *15-16 (sufficient that plaintiff alleged the phone "is primarily used for 'personal, family, and household communications,'" and was registered on the National DNC Registry); *Misner*, 2024 U.S. Dist. LEXIS 202146, at *9 (sufficient to allege that plaintiff "used his cellular telephone number 'for personal use and not for business.'"); *Boger v. Citrix Sys., Inc.*, 2020 U.S. Dist. LEXIS 36517, at *11-12 (D. Md. Mar. 3, 2020) (complaint "does not foreclose" that the cell phone "functioned as a residential telephone number"). At most, whether the line is residential is a question of fact that cannot be resolved on a motion to dismiss. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022) (treating registered cell phones used for personal purposes as "presumptively residential" and leaving rebuttal for after discovery).

This District has already rejected the argument Defendants press. In *Newman v. SGMS, Inc.*, No. 3:25-CV-00042-KDB-SCR, at *2–3, 2025 U.S. Dist. LEXIS 169748, *6 (W.D.N.C. Sept. 2, 2025), the court denied a Rule 12(b)(6) motion aimed at Section 227(c) claims, found the "recent majority" of district courts "persuasive," and expressly declined to follow *Gaker v. Q3M Insurance Solutions*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, 2023 U.S. Dist. LEXIS 44919 (W.D.N.C. Feb. 8, 2023)—the decision on which Defendants rely. Defendants themselves concede that *Newman*, and *Clemens v. Consumer Solution Center*, No. 1:21-cv-1002 (RDA/LRV), 2025 U.S. Dist. LEXIS 165086, *19 n. 6 (E.D. Va. July 14, 2025), R&R adopted, 2025 U.S. Dist. LEXIS 163917 (E.D. Va. Aug. 22, 2025), "have permitted a cellular telephone to be pleaded as residential under Section 227(c)." (Mem. 21.) *Gaker*, by contrast, is a magistrate judge's non-binding memorandum and recommendation—not a decision of the Fourth Circuit or even of a district judge—and it reflects a shrinking minority view.[2]

Nor does *ACA International v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018), resolve this question. The portion Defendants cite addresses the distinct restrictions Congress imposed in § 227(b) on calls to cellular service and residential lines, not whether a residentially used cellular number belongs to a "residential telephone subscriber" under § 227(c).

*Loper Bright* and *McLaughlin* do not change the analysis. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), does not eliminate agency authority where Congress has expressly delegated discretionary authority; in that circumstance, a reviewing court must identify the boundaries of the

---

[2] Plaintiff recognizes that one recent district-court decision reached the contrary conclusion. *Lowrey v. Twilio Inc.*, No. 6:25-cv-00116, 2026 WL 2958730, 2026 U.S. Dist. LEXIS 226120 (W.D. Va. Oct. 1, 2026). *Lowrey* is not binding and conflicts with substantial contrary authority within this Circuit, including *Newman*, *Clemens*, *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-CV-486, 2024 WL 4190513, 2024 U.S. Dist. LEXIS 165676 (M.D.N.C. Aug. 12, 2024), report and recommendation adopted, 2024 WL 4188310, 2024 U.S. Dist. LEXIS 164763 (M.D.N.C. Sept. 13, 2024), and *McGonigle v. Dickey's Barbecue Restaurants, Inc.*, 2026 WL 2114507, 2026 U.S. Dist. LEXIS 163300 (E.D. Va. July 22, 2026). More fundamentally, the contrary reading conflates two different phrases Congress chose in different subsections. Section 227(b) refers to a "residential telephone line"; Section 227(c), by contrast, protects "residential telephone subscribers" and directs creation of a database containing the telephone numbers of "residential subscribers." 47 U.S.C. § 227(c)(1), (3). Plaintiff alleges that she is precisely such a subscriber—she personally subscribes to and uses the cellular number for personal, residential, and household purposes. (FAC ¶¶ 38–39).

delegation and ensure that the agency engaged in reasoned decisionmaking within them. *Id.* at 394–95. Section 227(c)(3)'s direction to the FCC to build the do-not-call registry for "residential subscribers" is such a delegation, and the FCC's decision to admit wireless subscribers and presume them residential is a reasoned exercise of it. *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), holds only that the Hobbs Act does not bind district courts to the FCC's interpretation in private suits, while still requiring "appropriate respect" for the agency's view. And courts conducting the independent interpretation Defendants demand have overwhelmingly concluded that residentially-used cell phones are protected. *See, e.g.*, *Isaacs,* 2025 U.S. Dist. LEXIS 152625 at *7 (post-*McLaughlin*; "residential" is "tethered to a type of person rather than a type of technology"); *McGonigle v. Dickey's Barbecue Restaurants, Inc.*, 2026 U.S. Dist. LEXIS 163300, *8-10 (E.D. Va. July 22, 2026) (describing the "majority view" among Fourth Circuit district courts). Because both Count I and Count II arise under Section 227(c), the cellular-telephone argument fails as to both.

### D. <u>Count II States a Claim Under 47 C.F.R. § 64.1200(d).</u>

Defendants separately contend that Count II fails because the FAC does not detail their internal policies and because the calls ceased within thirty days (Mem. 21–23). Both arguments misapprehend the pleading standard and the regulation.

A plaintiff states a Section 64.1200(d) claim by alleging that she made a do-not-call request and continued to receive telemarketing calls; she need not plead the contents of the defendant's written policies, training, or recordkeeping, which are peculiarly within the defendant's knowledge. In *Fischman v. MediaStratX, LLC*, No. 2:20-CV-83-D, 2021 U.S. Dist. LEXIS 149734, *18 (E.D.N.C. Aug. 10, 2021), the court held the plaintiff "plausibly alleged a violation of section 64.1200(d)" because the defendant's "repeated attempts to call him indicate that [it] did not implement the procedures" required—had it maintained a compliant policy and internal list, the plaintiff "would not have continued to receive numerous calls." The court rejected the defendant's record-based factual dispute

as improper at the pleading stage. *Id.* 2021 U.S. Dist. LEXIS 149734, *14 & n.3. The FAC pleads exactly that: a December 16 do-not-call request (FAC ¶ 46), at least ten enumerated calls afterward (FAC ¶ 47), and the resulting failure to maintain written procedures, train personnel, and honor the request (FAC ¶¶ 76–77).

The same pleading principle was applied recently in *Hopkins v. HomeLight Inc.*, No. 3:26-cv-05017-BHS, Dkt. 23, at 10–11, 2026 U.S. Dist. LEXIS 154579, *12-13 (W.D. Wash. July 13, 2026), where the court denied dismissal of a § 64.1200(d) claim because repeated contacts after opt-out requests plausibly supported the inference that compliant internal procedures were not in place.

Defendants' "ceased within thirty days" argument fails three times over. First, Section 64.1200(d) imposes multiple independent duties—a written policy, training, recordkeeping, an internal do-not-call list, and honoring requests—and a solicitor that places ten or more calls after an express stop request has not shown compliance merely by eventually stopping. Second, the honor-time requirement is no longer thirty days: effective April 11, 2025—before the calls here—the FCC amended the rule to require honoring a do-not-call request "within a reasonable time" that "may not exceed ten (10) business days," 47 C.F.R. § 64.1200(d)(3), and the FAC alleges that the calls continued through January 2 and January 5, 2026—after that maximum ten-business-day period had expired (FAC ¶ 47). Third, whether Defendants actually maintained and followed compliant procedures is a merits question, not a pleading defect. Defendants' own authority confirms the point by contrast: *Autoguard* dismissed a Section 64.1200(d) claim because the plaintiff there never alleged that he asked the defendant to stop calling him—the precise allegation Plaintiff supplies here. *Autoguard*, 2024 U.S. Dist. LEXIS 33631, at *26

### E. Count IV States a Claim Under NCTSA § 75-102(b), and Defendants Identify No Independent Statutory Defect in Count III.

Defendants' final argument—that NCTSA § 75-102(b) must be read to incorporate the thirty-business-day period in § 75-102(c)(3), giving solicitors a grace period before opt-out liability attaches (Mem. 23–24)—asks the Court to rewrite the statute. Plaintiff is not aware of any court that has adopted Defendants' reading, and the statutory text forecloses it.

That conclusion follows ordinary North Carolina rules of statutory construction. Where statutory language is clear, North Carolina courts "are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388–89 (1978). Section 75-102(b) contains no thirty-business-day exception. Subsection (c)(3)'s outside deadline for completing removal from a contact list therefore cannot be converted into a thirty-day authorization to continue making solicitations that subsection (b) expressly prohibits.

Section 75-102(b) is an unconditional prohibition. It provides that "[n]o telephone solicitor shall make a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber previously has communicated to the telephone solicitor a desire to receive no further telephone solicitations from the telephone solicitor to that number." N.C. Gen. Stat. § 75-102(b). It contains no grace period, no time allowance, and no cross-reference to subsection (c)(3). The violation is making a solicitation after the subscriber has said stop.

Section 75-102(c)(3) is a separate provision with a different trigger and a different duty: it applies when a subscriber "requests to be taken off the contact list" of the solicitor, and it then requires the solicitor to remove the subscriber from its list and "stop calling the telephone subscriber within 30 business days." The Legislature knew how to write a time allowance when it wanted one—it did so in (c)(3), and again in (c)(5)'s sixty-business-day affiliate provision—but it wrote none into (b). Defendants' reading would import a deadline the Legislature deliberately omitted and would render subsection (b) a redundant restatement of (c)(3).

North Carolina law also requires a statute to be construed, if possible, so as to give effect to every provision because the General Assembly is presumed not to have enacted surplusage. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 216, 388 S.E.2d 134, 140 (1990). Defendants' interpretation does the opposite by effectively collapsing subsection (b)'s immediate prohibition into subsection (c)(3)'s separate administrative-removal obligation.

The statute's structure confirms the point. Section 75-103(b) provides that § 75-102(c)(3), (d), (g), and (j) "do not apply" to solicitations made under an established business relationship or with express permission—yet it leaves § 75-102(b) fully applicable to those same calls. A grace period engrafted onto (b) from (c)(3) cannot be reconciled with a scheme that switches (c)(3) off entirely while (b) remains in force.

The only statutory provision resembling Defendants' theory is the "mistake" bar in § 75-105(c), which forecloses a private action where "the violations are a result of mistake and" the solicitor either qualified for a § 75-103(a) exemption or "can show" that it "complied with G.S. 75-102(d)." That is a separate statutory safe-harbor/no-action provision dependent upon the solicitor's ability to make the showing specified by the statute—not an element Plaintiff must negate in her Complaint—and it turns on facts that cannot be resolved on the present Rule 12(b)(6) record. The FAC pleads the opposite of mistake: a clear verbal opt-out followed by at least ten calls over roughly three weeks. (FAC ¶¶ 46–47.)

Finally, the thirty-business-day argument does not touch Count III. Section 75-102(a) prohibits soliciting a number on the Do Not Call Registry, and the FAC alleges that Plaintiff's number has been registered since at least May 2018 and that Defendants solicited it. (FAC ¶¶ 40, 43–44.) Defendants' Section 227(c) cellular argument does not reach the NCTSA either, which expressly defines a "telephone subscriber" to include an individual who subscribes to service "from . . . a wireless telephone company." N.C. Gen. Stat. § 75-101(11). Counts III and IV state claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the First Amended Complaint in its entirety. In the alternative, if the Court concludes that the present record is insufficient to decide personal jurisdiction, Plaintiff requests targeted jurisdictional discovery before any dismissal; and if the Court concludes that any allegation requires greater specificity, Plaintiff requests leave to amend.

Respectfully submitted and dated this 27th day of October, 2026.

**BY:** *<u>/s/ Karl S. Gwaltney</u>*
Karl S. Gwaltney
**Maginnis Howard**
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, NC 27615
Telephone: 919-526-0450
Fax: 919-882-8763
kgwaltney@carolinalaw.com
*Local Civil Rule 83.1 Counsel for Plaintiff*

*<u>/s/ Timothy J. Sostrin</u>*
Keith Keogh
**Keogh Law LTD**
55 W. Monroe St #3390
Chicago, IL 60603
Telephone: 866-726-1092
Fax: 312-726-1093
Tsostrin@Keoghlaw.com
Keith@Keoghlaw.com
*Subject to Pro Hac Vice*

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been electronically filed with the Clerk of Court by using the CM/ECF system, which will send notice of the filing to all parties of record.

Dated this the 27th day of October, 2026.

*/s/ Karl S. Gwaltney*
Karl S. Gwaltney

*Local Civil Rule 83.1 Counsel for Plaintiff*